1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6   DAVID ALLEN GEIGER,

7                                        Plaintiff,

8        v.

9   CAROLYN W. COLVIN, Commissioner of
    Social Security,

10

11                                       Defendant.

Case No. 3:13-cv-05277-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12

13

14          Plaintiff has brought this matter for judicial review of defendant's denial of his

15   applications for disability insurance and supplemental security income ("SSI") benefits.

16   Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

17   parties have consented to have this matter heard by the undersigned Magistrate Judge.  After

18   reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

19   set forth below, defendant's decision to deny benefits should be reversed and that this matter

20   should be remanded for further administrative proceedings.

21                          FACTUAL AND PROCEDURAL HISTORY

22          On August 20, 2009, plaintiff filed an application for disability insurance benefits and

23

24   another one for SSI benefits, alleging he became disabled beginning June 10, 2006, due to

25   headaches, depression and a back injury. See ECF #7, Administrative Record ("AR") 11, 149.

26   Both applications were denied upon initial administrative review on October 28, 2009, and on

ORDER - 1

1    reconsideration on March 3, 2010. See AR 11.  A hearing was held before an administrative law

2    judge ("ALJ") on July 7, 2011, at which plaintiff, represented by counsel, appeared and testified,

3    as did a vocational expert. See AR 27-51.

4    In a decision dated August 18, 2011, the ALJ determined plaintiff to be not disabled. See

5    AR 11-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals

6    Council on February 21, 2013, making that decision the final decision of the Commissioner of

7    Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On April

8    10, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's

9    final decision. See ECF #1.  The administrative record was filed with the Court on June 28,

10   2013. See ECF #7.  The parties have completed their briefing, and thus this matter is now ripe

11   for the Court's review.

12   Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

13   for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff did not

14   have a severe mental impairment and in failing to give significant weight to the opinions of April

15   Leaveck, Psy.D.,; (2) in discounting plaintiff's credibility; and (3) in giving limited weight to the

16   disability rating decision issued by the United States Department of Veterans Affairs ("VA").

17   For the reasons set forth below, the Court agrees the ALJ erred in finding plaintiff did not have a

18   severe mental impairment, in giving minimal weight to the opinion of Dr. Leaveck and in giving

19   limited weight to the VA rating decision – and thus in determining plaintiff to be not disabled –

20   and therefore finds that defendant's decision to deny benefits should be reversed, and that this

21   matter should be remanded for further administrative proceedings.

22                                         DISCUSSION

23   The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

I.        The ALJ's Step Two Determination and Evaluation of Dr. Leaveck's Opinions

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ in this case found plaintiff's migraine headaches to be a severe impairment. See AR 13.  The ALJ further found in relevant part at step two:

> Depressive disorder is one of the bases for a 90% disability rating by the
> Veterans Administration (VA) on August 3, 2007 (Exhibit 14E at 7).
> However, the state-agency consultant, Ray Conroe, Ph.D., summarized from

ORDER - 4

the longitudinal record that the claimant's mental impairments are "mild" in all 4 major functional areas evaluated, and the claimant "was able to attend fulltime psychology grad school and maintain a variety of home and community services" including going out daily, having occasional lunch with friends, calling others twice a week, and playing computer games with friends (Exhibit 4F at 13).  Dr. Conroe's assessment was affirmed by Owen Nelson, Ph.D., on March 2, 2010 (Exhibits 4F, 8F at 3).  Depressive disorder, not otherwise specified, secondary to chronic headaches and personality disorder are non-severe impairments.

AR 14.  Plaintiff argues the ALJ erred in relying on the opinion of Drs. Conroe and Nelson in finding his depressive disorder to be non-severe and in turn not giving significant weight to those of Dr. Leaveck.  The Court agrees the ALJ erred in finding plaintiff did not have a severe mental impairment and in giving only minimal weight to Dr. Leaveck's opinion.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Id.  The ALJ also may draw inferences "logically flowing from the evidence."  Sample, 694 F.2d at 642.  Further, the Court itself may

ORDER - 5

1    draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

2    F.2d 747, 755, (9th Cir. 1989).

3         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

4    opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

5    1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

6    only be rejected for specific and legitimate reasons that are supported by substantial evidence in

7    the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

8    or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

9    (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

10   evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

11   Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

12

13        In general, more weight is given to a treating physician's opinion than to the opinions of

14   those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

15   not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

16   inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart,

17   278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d

18   1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001);

19   Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining

20   physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

21   Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial

22   evidence if "it is consistent with other independent evidence in the record." Id. at 830-31;

23   Tonapetyan, 242 F.3d at 1149.

24        With respect to the opinions of Dr. Leaveck the ALJ stated:

25

26

ORDER - 6

1
2
3
4
5
6

> The opinions of April Leaveck, Psy.D., on July 10, 2007, have been considered.  Dr. Leaveck opined that the claimant's psychiatric symptoms of ["]poor concentration, low energy, and low motivation" appeared to have "interfered with work" and that irritability at work would also be a problem. However, Dr. Leaveck also opined that there was no total occupational and social impairment due to mental disorder (Exhibit 1F at 112).  In view of the claimant's actual performance both academically and socially during the period of alleged disability, as well as his credibility issues, Dr. Leaveck's opinions are accorded minimal weight.

7
8
9
10
11
12
13
14
15

AR 19.  While it is true Dr. Leaveck did not opine that there was a *total* occupational and social impairment due to a mental disorder (see AR 344), this does not mean she did not feel plaintiff had *no* occupational or social impairments resulting therefrom.  Indeed, as the ALJ noted, Dr. Leaveck expressly opined that "[p]oor concentration, low energy, and low motivation" appeared "to have interfered with work," and that "irritability at work was likely also a problem." AR 345. Clearly, such issues could have a significant impact on plaintiff's ability to sustain employment, although the absence of vocational expert testimony in the record in regard thereto makes such a determination premature at this time.

16
17
18
19
20
21
22
23
24
25
26

The record also does not clearly establish that plaintiff's performance both academically and socially during the period of alleged disability is at odds with Dr. Leaveck's assessment of his work-related capabilities.  First, although it may be true that plaintiff was able to complete a significant portion of his degree programs during the relevant time period (see AR 19), and that he testified and reported on one occasion that he dropped out of his oriental medication program in part for a reason unrelated to his impairments (see AR 35, 311), the record also shows that on several occasions he reported having difficulties continuing with his classes due to his headaches (See AR 328-29, 355-56, 372, 463).  The ALJ did not sufficiently explain why these reports were less credible or why she did not attribute plaintiff's failure to continue with his schooling at least in part to his headaches. See AR 17, 19.

ORDER - 7

Nor did the ALJ sufficiently explain how plaintiff's ability to perform socially called into question Dr. Leaveck's opinions.  Medical opinion evidence may be discounted if it conflicts with other evidence of a claimant's ability to function, such as reported daily activities. See Morgan, 169 F.3d at 601-02.  Although the ALJ found plaintiff had only mild limitations in his ability to function socially based on the finding of Dr. Conroe that he "reported going out daily, having occasional lunch with friends, calling others twice a week, and playing computer games with friends on a daily basis" (AR 15), the record does not show plaintiff necessarily engaged in social activities either for a substantial part of the day or to an extent indicative of the existence of transferrable work skills. See AR 161-76; Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Smolen, 80 F.3d at 1284 and n.7.  Given that as noted above the ALJ relied on plaintiff's graduate school attendance and other social activities as summarized by Dr. Conroe to find plaintiff had no severe mental impairment, and that the ALJ did not provide any valid reasons for rejecting Dr. Leaveck's opinion, the ALJ's step two finding cannot stand.

II.      The VA's Disability Rating Decision

Although a determination by the VA about whether a claimant is disabled is not binding on the Social Security Administration ("SSA"), an ALJ must consider that determination in reaching his or her decision. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504.  Further, the ALJ "must ordinarily give great weight to a VA determination of disability." McCartey, 298 F.3d at 1076.  This is because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to
> those unable to work because of a serious disability.  Both programs evaluate
> a claimant's ability to perform full-time work in the national economy on a
> sustained and continuing basis; both focus on analyzing a claimant's
> functional limitations; and both require claimants to present extensive medical

ORDER - 8

1
2
3
4

documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

5

Id. However, "[b]ecause the VA and SSA criteria for determining disability are not identical,"

6

the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid

7

reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269

8

F.3d 520, 522 (5th Cir. 2001). The ALJ did not do so in this case.

9
10

In regard to the VA disability rating decision contained in the record, the ALJ found in

relevant part:

11

12
13
14
15
16
17
18
19
20

The Veterans Administration's combined disability rating dated August 3, 2007, has been considered. The claimant has now successfully gotten his VA disability rating raised to 90%, but the analysis includes depression which he has had all along and has not been an issue according to the claimant (Exhibit 14E at 2). The VA rating in this case is based on a "combined rating table" unrelated to the Social Security Administration's analysis for disability. Further, the VA rating, though considered, is not controlling in this case because it is not well supported. . . . For example, even though the VA decision cited "deficiencies in most areas" including schools and family relations (Exhibit 14E at 7), this finding is in direct conflict with the record – the claimant had achieved at least 36 graduate credit hours at a GPA of 3.333, and reported doing yard work with his wife and son, cooking family meals, and having lunch with friends on [a] regular basis (Exhibits 4E at 2, 4F at 13). For the multiple reasons above, the VA disability rating is accorded limited weight.

21

AR 19. Again the Court agrees with plaintiff that the ALJ erred in so finding.

22

First, contrary to the ALJ's assertion, plaintiff acknowledged on at least two occasions

23

that depression was indeed an issue for him (see AR 255-56, 316), and admitted to Dr. Leaveck

24

that he felt "depressed all  the time" (AR 341). Also, the medical evidence overall indicates

25

depression may have had a significant impact on plaintiff's condition. See AR 255-56, 306-07,

26

ORDER - 9

313-15, 317, 320-21, 329, 335, 344-45, 356, 363, 464.  Second, as noted above the mere fact that the VA based its rating on a "combined rating table" alone does not constitute a sufficient basis for rejecting that rating, given the "the marked similarity" between how the VA and SSA evaluate disability claims.  Third, while the ALJ states the VA rating decision is not well supported by the record in light of plaintiff's achievements in graduate school and his social activities, as discussed above the evidence overall concerning those achievements and activities indicates plaintiff may be far more limited than the ALJ found.

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to the medical evidence in the record concerning plaintiff's

ORDER - 10

1   mental impairments and limitations, and therefore in regard to his residual functional capacity[2]

2   and ability to perform other work,[3] remand for further consideration of those issues is warranted.

3   CONCLUSION

4   Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded

5   plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is REVERSED

6   and this matter is REMANDED for further administrative proceedings in accordance with the

7   findings contained herein.

8   DATED this 31st day of March, 2014.

9

10

11

12   Karen L. Strombom
     United States Magistrate Judge

13

14

15

16   [2] If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual

17   functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant

18   "can still do despite his or her limitations." Id.  The ALJ in this case found plaintiff had no mental limitations. See AR 16.  But because as discussed above the ALJ erred in evaluating the medical evidence in the record concerning

19   plaintiff's mental impairments and limitations, it is far from clear that the ALJ's RFC assessment is supported by substantial evidence and therefore free of error.

20   [3] If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation

21   process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).

22   The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

23   An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

24   1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description

25   of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). But because the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the

26   national economy at step five based on vocational expert testimony offered in response to a hypothetical question containing substantially the same limitations as were included in the ALJ's RFC assessment (see AR 21), that step five finding also cannot be said to be supported by substantial evidence and free of error at this time.

ORDER - 11